Nos. 26-1101, 26-1103, & 26-1104

**IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT**

DEFENDING EDUCATION, ET AL.,
*Plaintiffs-Appellants,*
*v.*
AUBREY C. SULLIVAN, ET AL.,
*Defendants-Appellees.*

COMMITTEE OF FIVE, INC., D/B/A/ XX-XY ATHLETICS,
*Plaintiff-Appellant,*
*v.*
AUBREY C. SULLIVAN, ET AL.,
*Defendants-Appellees.*

DOXA ENTERPRISES, LTD., D/B/A/ BORN AGAIN USED BOOKS,
*Plaintiff-Appellant,*
*v.*
AUBREY C. SULLIVAN, ET AL.,
*Defendants-Appellees.*

Appeal from the U.S. District Court for the District of Colorado
Nos. 1:25-cv-01572, 1:25-cv-01668 & 1:25-cv-02177 (Rodriguez, J.)

# BRIEF OF *AMICI CURIAE* INDEPENDENT WOMEN'S LAW CENTER AND MANHATTAN INSTITUTE IN SUPPORT OF PLAINTIFFS-APPELLANTS AND REVERSAL

Abigail Hornsby
BURKE LAW GROUP
116 Agnes Rd., Suite 200
Knoxville, TN 37919
(832) 987-2214
abigail.hornsby@burkegroup.law

Ilya Shapiro
*Counsel of Record*
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 20017
(212) 599-7000
ishapiro@manhattan.institute

June 12, 2026

*Additional counsel listed on signature page.*

## CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1, counsel for *amici* International Women's Law Center and Manhattan Institute certifies that (1) neither *amicus* has any parent corporations, and (2) no publicly held companies hold 10% or more of the stock or ownership interest in either *amicus*. *Amici* are both nonprofit corporations exempt from income tax under Section 501(c)(3) of the Internal Revenue Code,

Counsel also certifies that the following listed persons and entities as described in 10th Cir. R. 46 have an interest in the outcome of this case and were not included in the Certificates of Interested Persons in briefs that were previously filed.

1. Ilya Shapiro
2. Abigail Hornsby
3. Beth Parlato
4. Independent Women's Law Center
5. Manhattan Institute

*/s/ Ilya Shapiro*
Ilya Shapiro
Counsel for *Amici Curiae*

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT AND CERTIFICATE OF INTERESTED PERSONS .......... 1

TABLE OF CONTENTS .......... ii

TABLE OF AUTHORITIES .......... iii

INTEREST OF *AMICI CURIAE* .......... 1

SUMMARY OF THE ARGUMENT .......... 2

ARGUMENT .......... 3

I. FORCING ADHERENCE TO GENDER IDEOLOGY VIOLATES THE FIRST AMENDMENT .......... 3

A. Governments Cannot Compel Speech. .......... 4

B. Mandating the Use of Particular Sex Pronouns Constitutes Compelled Speech. .......... 6

II. COLORADO'S LAW HARMS THE INTERESTS OF WOMEN AND GIRLS .......... 7

CONCLUSION .......... 12

CERTIFICATE OF SERVICE .......... 13

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*303 Creative LLC v. Elenis*, 600 U.S. 570 (2023) .......... 3, 4, 5, 6

*Boy Scouts of America v. Dale*, 530 U.S. 640 (2000) .......... 4

*Defending Education v. Olentangy Local Sch. Dist.*, 158 F.4th 736 (6th Cir. 2025) (en banc) .......... 6, 7

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, No. 22-15827, 2023 WL 5946036 (9th Cir. Sept. 13, 2023) .......... 6

*Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557 (1995) .......... 3, 4

*Janus v. AFSCME*, 585 U.S. 878 (2018) .......... 5

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) .......... 4

*Olympus Spa v. Armstrong*, 169 F.4th 817 (9th Cir. 2026) .......... 8–9

*West Virginia v. B.P.J.*, No. 24-43 (U.S., argued Jan. 13, 2026) .......... 9

*W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) .......... 3, 4, 5, 7

**STATUTES**

Colo. Rev. Stat. § 24-34-301(3.5), (9) .......... 2, 6, 11

Colo. Rev. Stat. § 24-34-601(2)(a) .......... 2

**OTHER AUTHORITIES**

Doriane Lambelet Coleman & Wickliffe Shreve, *Comparing Athletic Performances: The Best Elite Women to the Boys and Men*, Duke Ctr. for Sports L. & Pol'y (Summer 2017) .......... 10

Indep. Women's Law Center, Competition: Title IX, Male Athletes, and the Threat to Women's Sports (3d ed. 2025)..........11

Luke Andrews, *Female Volleyball Player, 17, Left Paralyzed with Brain Damage by Transgender Opponent Who 'Cackled with Delight' after Knocking Her to Ground*, Daily Mail, July 31, 2024 ..........11

NCAA Participation Policy for Transgender Student-Athletes (2025) ..........11

Noah Furtado, *Transgender Athlete AB Hernandez Adds Two State Titles as High School Track and Field Career Ends*, S.F. Chronicle, May 30, 2026 ..........10

Valerie E. Lee & Anthony S. Bryk, *Effects of Single-Sex Secondary Schools on Student Achievement and Attitudes*, 78 J. Educ. Psychol. 381 (1986)..........8

*West Virginia Trans Athlete's State Title Draws Supreme Court Case Attention*, Newsmax, May 28, 2026..........9

World Aquatics Policy on Eligibility for the Women's Category (2022) ..........11

World Athletics Eligibility Regulations for Female Competition (2023) ..........11

*Why Elite Women's Sports Need to Be Based on Sex, Not Gender*, Wash. Post, Aug. 16, 2024..........10

World Aquatics Policy on Eligibility for the Women's Category (2022) ..........11

World Athletics Eligibility Regulations for Female Competition (2023) ..........11

## INTEREST OF *AMICI CURIAE*[1]

Independent Women's Law Center (IWLC) is a project of Independent Women's Forum (IWF), a nonprofit, nonpartisan organization founded by women to foster education and debate about legal, social, and economic issues. IWF promotes access to free markets and to the marketplace of ideas and supports policies that expand liberty, encourage personal responsibility, and limit government.

The Manhattan Institute (MI) is a nonprofit public policy research foundation whose mission is to develop new ideas that foster economic choice and individual responsibility. Drawing on research, reporting, and analysis, MI works to improve the quality of life, overcome cultural divides, promote educational excellence, and expand economic freedom.

IWLC has a particular interest in preserving women's sex-based civil rights and liberties, including the freedom from coerced speech. MI has a particular interest in defending constitutional speech protections because its scholars have been targets of speech-suppression efforts.

---

[1] No party's counsel authored this brief in any part. No person other than *amici*, their members, or their counsel funded its preparation or submission. Plaintiffs-Appellants all consented to the filing of this brief, but Defendants-Appellees "take no position" on *amici*'s request for consent. Accordingly, out of an abundance of caution, *amici* file a motion for leave alongside this brief.

## SUMMARY OF THE ARGUMENT

Colorado's recent amendment of its Anti-Discrimination Act expanded the definition of "gender expression" to include an individual's "chosen name, and how the individual chooses to be addressed." Colo. Rev. Stat. § 24-34-301(3.5), (9). In the context of the state's public accommodations law, Colo. Rev. Stat. § 24-34-601(2)(a), these changes violate the First Amendment because they impermissibly compel individuals to speak contrary to their beliefs—whether rooted in science, faith, or philosophy—regarding the binary and immutable nature of biological sex. The Supreme Court has never permitted states to compel individuals to speak contrary to their beliefs, even for the commendable purpose of preventing discrimination in public accommodations.

Moreover, the laws here would harm the interests of girls and women, who benefit from sex-based spaces, rights, and privacies in public accommodations and elsewhere. They would harm girls and women by reducing self-esteem and sense of personal control. The restrictions on pronoun usage would also cause males to steal opportunities from females in athletics, where males have a significant physiological advantage, and would also lead to physical injuries to girls and women.

# ARGUMENT

## I. Forcing Adherence to Gender Ideology Violates the First Amendment

Eighty years ago, the Supreme Court confirmed that "[i]f there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943); *see also 303 Creative LLC v. Elenis*, 600 U.S. 570, 572 (2023) (holding that the First Amendment prohibits a state from forcing a web designer to create messages with which she disagrees).

Half a century after *Barnette*, the Court affirmed this conclusion in the context of anti-discrimination laws, stating that although a state may prohibit "the *act* of discriminating against individuals," it is "not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened either purpose may strike the government." *Hurley v. Irish-American Gay, Lesbian, and Bisexual Group of Boston*, 515 U.S. 557, 572, 579 (1995).

### A. Governments cannot compel speech.

The Supreme Court has never permitted states to compel an individual to speak contrary to his or her beliefs, even to advance the "compelling interest" of "eliminating discrimination in places of public accommodation." *303 Creative*, 600 U.S. at 590 (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 628 (1984)); *see also Barnette*, 319 U.S. at 642 (noting that the Constitution protects "the sphere of intellect and spirit" against "all official control").

Although the Court has emphasized the "vital role public accommodations laws play in realizing the civil rights of all Americans," such laws are not "immune from the demands of the Constitution." *303 Creative*, 600 U.S. at 590, 592. The Court has repeatedly held that "public accommodations can sweep too broadly when deployed to compel speech." *Id.* at 592; *see Boy Scouts of America v. Dale*, 530 U.S. 640, 659 (2000) (finding that a state's public-accommodations law could not "justify such a severe intrusion on the Boy Scouts' rights to freedom of expressive association"); *Hurley*, 515 U.S. at 571, 578 (holding that such a law could not be "applied to expressive activity" to "require speakers to modify the

content of their expression to whatever extent beneficiaries of the law choose to alter it with messages of their own").

Just three years ago, the Supreme Court reaffirmed this constitutional limitation on public-accommodations laws in *303 Creative*. 600 U.S. at 590, 592. There, the Court held that Colorado could not compel a website designer to "create websites celebrating marriages she [did] not endorse," even if doing so furthered the government's interest in nondiscrimination: "[T]he First Amendment protects an individual's right to speak his mind regardless of whether the government considers his speech sensible and well intentioned or deeply misguided, and likely to cause anguish or incalculable grief." *Id.* at 586 (cleaned up).

Compelling speech causes unique First Amendment harms because when "speech is compelled, . . . individuals are coerced into betraying their convictions." *Janus v. AFSCME*, 585 U.S. 878, 893 (2018). The *Barnette* Court carefully noted that the restriction on compelled speech did not "turn on one's possession of particular religious views or the sincerity with which they are held." 319 U.S. at 634. Whether a Coloradan's belief on pronoun usage is rooted in science, faith, or

philosophy, that individual's right not to be compelled to violate that belief is protected by the First Amendment.

Ultimately, "[w]hen a state public accommodations law and the Constitution collide, there can be no question" that the Constitution "must prevail." *303 Creative*, 600 U.S. at 391; *see also Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, No. 22-15827, 2023 WL 5946036, at *23 (9th Cir. Sept. 13, 2023) (noting that "[a]nti-discrimination laws and policies serve undeniably admirable goals, but when those goals collide with the protections of the constitution, they must yield—no matter how well-intentioned").

### B. Mandating the use of particular sex pronouns constitutes compelled speech.

Colorado's newly amended Anti-Discrimination Act compels speech on pronouns and chosen names in violation of an individual's beliefs, thus reaching far beyond what the Supreme Court has authorized in the public-accommodation context. *See* Colo. Rev. Stat. § 24-34-301(3.5), (9).

The en banc Sixth Circuit recently addressed a similar issue in the school context, holding that a public school's anti-discrimination policy could not compel students to use preferred pronouns. *Defending Education v. Olentangy Local Sch. Dist.*, 158 F.4th 736, 738 (6th Cir.

2025) (en banc). The court highlighted the ongoing societal debate about biological pronouns, finding it "concerning" that the school district had "not just entered this policy debate," but had "taken a side" by "target[ing] a speaker's use of biological pronouns as improper while allowing students to use preferred pronouns (no matter how novel)." *Id.* at 754-55. The court concluded that such viewpoint discrimination is "uniquely harmful to a free and democratic society because it skews the marketplace of ideas by putting a thumb on the scale in favor of certain perspectives." *Id.* at 755.

The same holds true here. The amended Anti-Discrimination Act is Colorado's latest attempt to enter the debate about transgender rights and choose a side. It both discriminates based on viewpoint and compels people to speak against their sincerely held convictions, requiring them to "affirm[ ] . . . a belief and an attitude of mind" they do not share. *Barnette*, 319 U.S. at 633.

## II. Colorado's Law Harms the Interests of Women and Girls

Girls and women have unique needs, particularly in certain public accommodations. Using biologically accurate sex-based pronouns is necessary to preserve sex-based spaces. Studies have found that girls and

women in single-sex schools have higher levels of self-esteem and sense of personal control. *See, e.g.*, Valerie E. Lee & Anthony S. Bryk, *Effects of Single-Sex Secondary Schools on Student Achievement and Attitudes*, 78 J. Educ. Psychol. 381 (1986).

Forcing the use of the biologically incorrect pronouns is the first step towards allowing males to intrude on females' private spaces, including locker rooms, restrooms, social clubs, and living quarters. Using female pronouns for biological males endorses and reinforces the harmful falsehood that the term "women" can mean men. Males who refer to themselves as female then can and do insist on access to all girls' and women's spaces and programs. *See Olympus Spa v. Armstrong*, 169 F.4th 817, 825, 830-31 (9th Cir. 2026) (holding that female-only Korean health spa could not exclude "preoperative transgender women," and any regulation of speech was "incidental" to the law's regulation of conduct).

Indeed, *Olympus Spa* became a national news story because of the fiery debate among Ninth Circuit judges about the issues it raised regarding women's intimate spaces. *See*, *e.g.*, *id*. at 848 (VanDyke, J., dissenting from denial of rehearing en banc); *id*. at 844–45 (McKeown, J., responding to Judge VanDyke's dissental); *id*. at 848 (Owens, J., also

responding to Judge VanDyke's dissental); *id*. at 862 (Tung, J., further dissental); *id*. at 865 (Collins, J., further dissental); *id*. at 845 (McKeown, J., responding to these other dissentals). Regardless of the ultimate disposition of that case—a cert. petition is coming, *see* No. 25A1111 (U.S., extending filing deadline to July 10, 2026)—the slippery slope is obvious.

IWLC also challenged the Biden Administration's rewrite of Title IX to include (an undefined) gender identity that would eviscerate female-only spaces. *See, e.g.*, Brief of *Amicus Curiae* Independent Women's Law Center Supporting Petitioners, *West Virginia v. B.P.J.*, No. 24-43 (U.S., argued Jan. 13, 2026). Decisions by students and coaches to limit the use of female pronouns to females preserve girls' sports by dismantling the idea that some biological males should be able to compete with females. Such a limitation prevents boys and men from stealing opportunities from girls and women, who tend to be at a drastic physiological disadvantage in athletics.

For example, just a few weeks ago, a boy who identifies as a girl—the respondent in *West Virginia v. BPJ*, U.S. No. 24-43—won the girls' shot put at the West Virginia state track championships. *West Virginia Trans Athlete's State Title Draws Supreme Court Case Attention*,

Newsmax, May 28, 2026, https://tinyurl.com/2uedtj65. And the same thing happened in California's state track championships for the second year in a row. Noah Furtado, *Transgender Athlete AB Hernandez Adds Two State Titles as High School Track and Field Career Ends*, S.F. Chronicle, May 30, 2026, https://tinyurl.com/36v64buh.

Two years ago, two dozen American boys under the age of 17 swam faster than multiple-gold-medalist Katie Ledecky in her best event. Doriane Lambelet Coleman, *Why Elite Women's Sports Need to Be Based on Sex, Not Gender*, Wash. Post, Aug. 16, 2024. On average, due to biology, male bodies have at least a 10% athletic advantage over female bodies. See, e.g., Doriane Lambelet Coleman & Wickliffe Shreve, *Comparing Athletic Performances: The Best Elite Women to the Boys and Men*, Duke Ctr. for Sports L. & Pol'y (Summer 2017), https://tinyurl.com/352my9z8. Competing with males demoralizes those females; they are outclassed and often effectively excluded altogether. Female-only sports platform females in the same way that senior-division sports platform senior citizens. Female-specific sports have positive outcomes for girls and women, including boosting self-confidence, physical health, and a sense of teamwork.

Such sports also protect females from injury by males, who tend to be much bigger, stronger, and solidly built. *See* Indep. Women's Law Center, *Competition: Title IX, Male Athletes, and the Threat to Women's Sports* 12 (3d ed. 2025), https://www.iwf.org/competition-report. For example, during a high school volleyball game in September 2022, Payton McNabb received a devastating head and neck injury from a spike by a trans-identifying male. Luke Andrews, *Female Volleyball Player, 17, Left Paralyzed with Brain Damage by Transgender Opponent Who 'Cackled with Delight' after Knocking Her to Ground*, Daily Mail, July 31, 2024, https://tinyurl.com/4k9aavhm. Sports have thus established rules banning male participation on women's teams. *See, e.g.*, NCAA Participation Policy for Transgender Student-Athletes (2025); World Athletics Eligibility Regulations for Female Competition (2023); World Aquatics Policy on Eligibility for the Women's Category (2022).

The amended Colorado Anti-Discrimination Act would lead to the normalization of boys and men in female spaces, severely harming those girls and women. Colo. Rev. Stat. § 24-34-301(3.5), (9).

## CONCLUSION

Any claim that a state government can prophylactically limit and even compel a change in common word use with deep personal and scientific meaning should be met with extreme skepticism. This Court should reverse the district court.

Respectfully submitted,


Abigail Hornsby
BURKE LAW GROUP
116 Agnes Rd., Suite 200
Knoxville, TN 37919
(832) 987-2214
abigail.hornsby@burkegroup.law

Ilya Shapiro
*Counsel of Record*
MANHATTAN INSTITUTE
52 Vanderbilt Ave.
New York, NY 20017
(212) 599-7000
ishapiro@manhattan.institute

Beth Parlato
INDEPENDENT WOMEN'S LAW CENTER
1802 Vernon St. NW
Suite 1027
Washington, DC 20009
(202) 807-9986
beth.parlato@iwf.org


June 12, 2026

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,136 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word counting feature of the software (Microsoft Office 365) used to prepare this brief.

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: June 12, 2026

*/s/ Ilya Shapiro*
Ilya Shapiro
Counsel for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, I electronically filed the above with the Clerk of Court using the CM/ECF system which will send notification of this filing to counsel for all parties.

*/s/ Ilya Shapiro*
Ilya Shapiro
Counsel for *Amici Curiae*